Mahyar Ghassemian, Esq. [SBN 203839]
GHASSEMIAN LAW GROUP, APC
27405 Puerta Real, Suite 250
Mission Viejo, CA  92691
Telephone:  (949) 436-2785
Facsimile:   (949) 371-8076

Attorneys for Plaintiff, nKLOSURES, INC. ARCHITECTS fka nKLOSURES, INC., a California corporation

## UNITED STATE DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

nKLOSURES, INC. ARCHITECTS fka nKLOSURES, INC., a California corporation,

Plaintiff,

vs.

AVALON LODGING, LLC; BIPIN MORARI, an individual; W&W LAND DESIGN CONSULTANTS, INC.; a California corporation; WINSTON LIU, P.E., an individual; TOM LAU, AIA, an individual; and DOES 1 through 10, inclusive,

Defendants.

Case No.:  8:22-CV-00459

**VERIFIED COMPLAINT FOR:**
  1. **COPYRIGHT INFRINGEMENT (17 U.S.C. §501);**
  2. **FRAUDULENT CONCEALMENT;**
  3. **FRAUD-FALSE PROMISE;**
  4. **NEGLIGENT MISREPRESENTATION;**
  5. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; and**
  6. **UNFAIR BUSINESS PRACTICES  PURSUANT TO CALIFORNIA BUSINESS & PROFESSIONS CODE §17200**

**DEMAND FOR JURY TRIAL**

///

///

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Plaintiff nKLOSURES, INC. ARCHITECTS fka nKLOSURES, INC. ("Plaintiff") by its attorneys and for its Verified Complaint against Defendants AVALON LODGING, LLC; BIPIN MORARI, an individual; W&W LAND DESIGN CONSULTANTS, INC.; a California corporation; WINSTON LIU, P.E., an individual; TOM LAU, AIA, an individual; and DOES 1 through 10 alleges as follows:

## JURISDICTION AND VENUE

1.      This is a civil action for Copyright Infringement (17 U.S.C. §501) and for claims related to the Copyright Infringement of Fraudulent Concealment, Fraud-False Promise, Negligent Misrepresentation, Intentional Interference with Prospective Advantage and Unfair Business Practices Pursuant To California *Business & Professions Code* §17200.  This court has subject matter jurisdiction over Copyright Infringement pursuant to 17 U.S.C. §501(a).  This Court has supplemental jurisdiction over the claims alleged under state law pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from the same operative facts and circumstances.

2.      Venue is proper in this judicial district pursuant to 28 U.S.C § 1391 and 28 U.S.C. § 1400 (b) because the injury Plaintiff suffered took place in this judicial district and because the claims arose in this judicial district and Defendants can be found in this judicial district.

## PARTIES

3.      At all times relevant herein, Plaintiff nKLOSURES, INC. ARCHITECTS was, and is, a corporation organized and existing under the laws of the State of California and doing business in the County of Los Angeles, California.  On November 7, 2017, a Certificate of Amendment was filed with the Secretary State of the State of California and the name of the entity was changed

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

from nKLOSURES, Inc. to nKLOSURES, Inc. Architects. No other aspect of the entity was changed, and this is the same entity that was involved in events that are the subject matter of the current litigation.

4.     Plaintiff is informed and believes and thereon alleges that, at all times relevant herein, Defendant Avalon Lodging, LLC ("AVALON") was and is a limited liability corporation organized and existing under the laws of the State of California.

5.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein, Defendant Bipin Morari ("MORARI") was and is an individual residing in the County of Los Angeles, California, and that he was a principal and managing agent of AVALON.

6.     Plaintiff is informed and believes and thereon alleges that, at all times relevant herein, Defendant W&W Land Design Consultants, Inc. ("W&W") was and is a corporation organized and existing under the laws of the State of California and doing business in the County of Los Angeles, California.

7.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein, Defendant Winston Liu, P.E. ("LIU") was and is an individual residing in the County of Los Angeles, California, and that he was and is a principal and managing agent of W&W.

8.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein, Defendant Tom Lau, AIA ("LAU") was and is an individual residing in the County of Los Angeles, California, and that he was and is an employee of W&W.

9.     The names and capacities, whether individual, corporate or otherwise of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who thereupon sues such Defendants by fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff   is

informed and believes and thereon alleges that each such fictitiously named Defendant is liable for the conduct complained of herein, which proximately caused damage to Plaintiff as alleged herein.

10.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, Defendants AVALON, MORARI, DOES 1 through 5, and each of them, were the agents, employees, servants and/or representatives of each other, and in doing the things alleged herein, were acting within the course and scope of their authority as such agents, employees, servants and/or representatives and with the permission and consent of each of the other Defendants.

11.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, Defendants W&W, LIU, and LAU and DOES 6 through 10, and each of them, were the agents, employees, servants and/or representatives of each other, and in doing the things alleged herein, were acting within the course and scope of their authority as such agents, employees, servants and/or representatives and with the permission and consent of each of the other Defendants.

## STATEMENT OF RELEVANT FACTS

12.     On or about May 25, 2014, Plaintiff, a licensed architectural firm, entered into a contract with Mr. Thakor Patel ("PATEL") to provide architectural design services for a new hotel to be built at 11135 and 11139-11145 W. Burbank Blvd. in Los Angeles, California (the "Project"). The Project is now a completed hotel currently named "BW Premier NOHO Inn."  In this contract, Plaintiff agreed to provide four phases of work for the Project: 1) Initial studies; 2) Site planning and preliminary design; 3) Final conceptual design; and 4) Consulting services. This contract indicated that Plaintiff was the sole author, owner, and copyright holder of all architectural plans which were provided to PATEL by Plaintiff for the Project.  The contract further provided that once the architectural plans had

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

received the Planning Department Approvals for the Hotel Project proposed on the Property ("Project Approvals"), Plaintiff would be retained by PATEL to serve as the Design Architect and the Architect of Record for all phases of the construction of the Project.

13.    Plaintiff competently and timely performed all services to be provided to PATEL by Plaintiff pursuant to the contract and obtained the Planning Department Approval and Determination, Entitlement or Discretionary Approvals for the Project.   All of Plaintiff's designs and drawings for the Project were stamped with the following language:

> **"No copies, transmission, reproductions or electronic manipulations of any portion of these drawings in whole or in part are to be made without the express written permission from nKLOSURES Inc. All content in these drawings (including concepts, designs, imagery, graphics and logo) are the property of nKLOSURES Inc."**

14.    On or about June 5, 2015, after obtaining the necessary Planning Approvals, Plaintiff learned that PATEL was selling the Project to AVALON and MORARI.

15.    On or about June 5, 2015, upon learning that the Project was being sold to AVALON and MORARI, Plaintiff's principal, Mr. Nikhil Kamat ("Mr. Kamat") called MORARI and explained that Plaintiff was the Architect of Record for the Project, that it had obtained all Project Approvals and Determinations from the Planning Department, and Entitlement or Discretionary Approvals and explained that Plaintiff can continue on the Project.   MORARI asked Mr. Kamat for a proposal for Plaintiff's continuing its work at the Project. Mr. Kamat explained that he would need to get proposals from various engineering consultants and then give MORARI a proposal.     Plaintiff and

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

MORARI discussed the fact that as part of the Plaintiff's proposal a copy of Plaintiff's architectural drawings and plans would be included with the proposals. Mr. Kamat made it clear that unless MORARI agreed to use Plaintiff as the architect on the Project, MORARI could not use the architectural drawings and plans.  MORARI told Mr. Kamat to get the consultant proposals and give him Plaintiff's proposals.  MORARI knew that the plans for the hotel were being disclosed upon the condition that the architectural drawings and plans could not be used without paying Plaintiff for the architectural drawings and plans and using Plaintiff as the architect for the Project. Mr. Kamat then sent an e-mail to all the consultants to get their proposals and went about collecting these proposals and drafting a complete proposal for Plaintiff to continue the work as Architect of Record pursuant to the same terms as the contract with the previous owner.

16.     On June 15, 2015, Mr. Kamat sent an email to MORARI, informing him of the progress of the process of putting together the proposal and that he would get it to him soon.  MORARI did not respond to this e-mail.

17.     On June 26, 2015, Mr. Kamat sent MORARI an email containing Plaintiff's proposal for the next stage of development, which included: 1) Design development; 2) Architectural construction documents; 3) Agency review and bidding; and 4) Construction phase services. The cost estimate for these services contained within the proposal for Plaintiff's services was $90,000, plus $200/hour for additional services. Mr. Kamat also obtained and submitted copies of proposals for structural, mechanical, electrical, plumbing, civil, and landscape services for the Project, as well for Plaintiff's own architectural services. In this emailed proposal, Mr. Kamat also indicated to MORARI that Plaintiff was the sole owner, author, and copyright holder of all architectural drawings and plans created by Plaintiff for the hotel, and that upon execution of the contract Plaintiff

///

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

would grant AVALON and MORARI a license for use of the architectural drawings and plans for the Project.

18.     MORARI accepted the proposal sent via email to him.  Mr. Kamat and MORARI then had several telephone conversations about Plaintiff's proposal on June 26, 2015 and June 27, 2015. According to the phone records obtained by Plaintiff, these calls were of significant duration, one for 5 minutes and another for 14 minutes. Plaintiff is informed and believes and thereon alleges that during these calls, Mr. Kamat and MORARI discussed, amongst other subjects, timeframe of work, what drawings and services would be provided, general permit process and timing of building permits. Mr. Kamat explained that it was beneficial to utilize Plaintiff's services because the planning department had already approved the plans designed by Plaintiff.  Mr. Kamat also told MORARI that he had emailed him the proposal and MORARI stated he had received it and that he would review and get back to Mr. Kamat. MORARI accepted the proposal knowing that if MORARI decided to use the architectural drawings and plans that MORARI had to pay for the architectural drawings and plans and would use Plaintiff as the architect on the Project. Then MORARI went silent and abruptly cut off all contact with Mr. Kamat.

19.     After not hearing back from MORARI for several weeks thereafter, Mr. Kamat sent MORARI an email dated July 14, 2015, to follow up on the proposal he had sent to MORARI on June 26, 2015. MORARI did not respond to Mr. Kamat's email, nor did he contact Plaintiff again with respect to the proposal. From the lack of further communication and MORARI's failure to respond to any follow up email, Mr. Kamat inferred that MORARI was not interested in using Plaintiff's architectural drawings and plans and was not interested in having Plaintiff perform the work.

///

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

20.     Unbeknownst to Plaintiff, the drawings and plans prepared by Plaintiff were included in a Power Point presentation which Plaintiff has been told was used in the marketing of the property.  Plaintiff did not learn that the plans and drawings had been part of a marketing campaign until sometime after June 22, 2020.

21.     On or about June 22, 2020, Mr. Kamat saw an advertisement for sale of a hotel since constructed on the property and recognized the design as being his design.  He also learned for the first time that MORARI and AVALON had hired W&W, LIU and LAU as consultants for the next stage of development on the Project, and that MORARI, AVALON, W&W, LIU, and LAU had used Plaintiff's preliminary schematic level Design and Drawings, including elevations, sections, details and specifications (collectively, "Plaintiff's architectural drawings and plans") in the Construction Documents phase of development of the hotel which had been provided by Plaintiff to PATEL, the previous owner, and which MORARI had agreed would not be used unless Plaintiff was retained as the architect on the Project.

22.     The drawings and design ostensibly created by W&W, LIU, and LAU were almost exactly the same as the plans and designs which were created by Plaintiff. (See Exhibit A and B.)

23.     Such use was without the license, consent, permission, or knowledge of Plaintiff, and without compensation to Plaintiff, despite the fact that all Defendants knew or should have known that Plaintiff was the sole owner and author of Plaintiff's architectural drawings and plans and despite the fact that this ownership was stamped on the Plaintiff's architectural drawings and plans themselves by Plaintiff. This conduct caused a loss of substantial revenue to Plaintiff.

///

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

24.     On January 13, 2022, Plaintiff filed a Copyright Application with the United States Copyright Office for the plans and drawings Plaintiff created for the Burbank Hotel.

25.     On or about January 18, 2022, Plaintiff received confirmation that the Copyright Application was accepted by the United States Copyright Office and that plans and drawings for the Burbank Hotel were granted Copyright Registration Certificate No.  VA 2-282-647.    A true and correct copy of the Certificate of Registration is attached hereto as Exhibit C.

## FIRST CLAIM FOR RELIEF

### (Against All Defendants for Copyright Infringement

### Pursuant to 17 U.S.C § 501)

26.     Plaintiff incorporates by reference paragraphs 1 through 25 of this Complaint as though fully set forth herein.

27.     At all relevant times Plaintiff owned the Copyrights to the plans and drawings it created for the Burbank Hotel

28.     Attached hereto as Exhibit C is the Copyright Certificate of Registration for the plans for the Burbank Hotel.  This Copyright registration is *prima facie*  evidence of the validity of the copyrights in the plans for the Burbank Hotel and the facts stated in the Certificate of Registration.

29.     Defendants infringed upon Plaintiff's exclusive right to reproduce, make copies, distribute, and to use the plans in building a hotel in accordance with the plans and designs by Plaintiff.

30.     Defendants utilized Plaintiff's designs and plans in obtaining a permit to build the hotel and in the building of the hotel.  This is evidenced by the fact that plans submitted by defendants to the City still had Plaintiff's logo on them.  The overall design created for construction of the Project matches with the Plaintiff's design.

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

31.     Defendants knew or should have known that their acts constituted Copyright Infringement.

32.     Defendants' infringing conduct was willful within the meaning of the Copyright Act of 1976.

33.     As a result of Defendants' infringement of the Copyright, Plaintiff is entitled to: (a) a declaration, pursuant to 28 U.S.C. § 2201, that Defendants have infringed the Copyright; (b) a preliminary and permanent injunction, pursuant to 17 U.S.C. § 502 enjoining Defendants and all persons in active concert or participation with Defendants from directly or indirectly infringing the Copyright; and (c) an award of actual damages and profits under 17 U.S.C. § 504(b).

### SECOND CLAIM FOR RELIEF

**(Against Defendants BIPIN MORARI, AVALON LODGING, LLC and DOES 1 through 5 for Fraudulent Concealment)**

34.     Plaintiff repeats, re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 33, inclusive, of this Complaint, as though fully set forth herein.

35.     As set forth above, on or about June 5, 2015, upon learning that the Project was being sold to AVALON and MORARI, Plaintiff's principal, Mr. Kamat, called MORARI and explained that Plaintiff was the Architect of Record for the Project, that it had obtained all Project Approvals and Determinations from the Planning Department, and Entitlement or Discretionary Approvals and explained that Plaintiff can continue on the Project.  MORARI asked Mr. Kamat for a proposal for Plaintiff's continuing its work at the Project. Mr. Kamat explained that he would need to get proposals for various engineering consultants and then give MORARI a proposal.  Plaintiff and MORARI discussed the fact that as part of the Plaintiff's proposal a copy of Plaintiff's architectural drawings and plans would be included with the proposals. Mr. Kamat made it

clear that unless MORARI agreed to use Plaintiff as the architect on the Project, MORARI could not use the architectural drawings and plans.  MORARI told Mr. Kamat to get the consultant proposals and give him Plaintiff's proposals. MORARI knew that the plans for the hotel were being disclosed upon the condition that the architectural drawings and plans could not be used without paying Plaintiff for the architectural drawings and plans and using Plaintiff as the architect for the Project. Mr. Kamat then sent an e-mail to all the consultants to get their proposals and went about collecting these proposals and drafting a complete proposal for Plaintiff to continue the work as Architect of Record pursuant to the same terms as the contract with the previous owner.

36.    Mr. Kamat, in his communications to MORARI prior to the disclosure of Plaintiffs' architectural drawings and plans, made it clear that the disclosure was conditioned upon MORARI agreeing that he would pay Plaintiff for the use of the architectural drawings and plans and would use Plaintiff as the architect on the Project.  MORARI accepted Plaintiff's proposal based upon the condition that he would pay Plaintiff for the use of the architectural drawings and plans and would use Plaintiff as the architect on the Project.  This arrangement was an implied in-fact-contract of the nature recognized by the California Supreme Court in *Wilder v. Desny*  (1956) 46 Cal. 2d 715.

37.    As set forth above, in the email sent to MORARI, individually and on behalf of AVALON, Mr. Kamat made it clear that Plaintiff was the sole owner, author, and copyright holder of all architectural drawings and plans created by Plaintiff for the hotel, and that only upon execution of the contract by AVALON and MORARI would Plaintiff grant a license for use of the architectural drawings and plans for the Project.

38.    On June 27, 2015, in the telephone call with Defendant MORARI, individually and acting on behalf of AVALON, Mr. Kamat again told MORARI

that the architectural drawings and plans for the hotel were Plaintiff's property. Mr. Kamat reminded MORARI that the architectural drawings and plans for the hotel could not be used without payment for the architectural drawings and plans and Plaintiff being the architect on the Project.  Mr. Kamat explained to MORARI the process of obtaining approval and permits for the building.   Mr. Kamat explained that it would be financially beneficial to MORARI to utilize his plans because the city planning department had already approved the Design and Drawings created by Plaintiff and if new plans were designed then approval of the city planning department would be required.   Mr. Kamat explained that using Plaintiff as the architect on the Project would lower the cost to MORARI and decrease the time necessary to complete the Project.   MORARI acknowledged Mr. Kamat's statements and responded that he would review the proposal and would get back to him. An implied-in-fact contract therefore was formed between Plaintiff and MORARI by which Morari had an obligation to only use the architectural drawings and proposals for purpose of ascertaining whether he was going to use Plaintiff for the Project and created a duty that MORARI not utilize them for any other purpose.

39.     Instead of responding to Mr. Kamat, MORARI thereafter ignored all attempts by Kamat to continue the discussion.   Mr. Kamat's last attempt to communicate with MORARI was via email on July 14, 2015.

40.     Despite acknowledging in the telephone call with Mr. Kamat that the plans exclusively belonged to Mr. Kamat, and accepting the proposal on the condition that Plaintiff be paid for the architectural drawings and plans and that Plaintiff would be hired as the architect on the Project, MORARI, individually and on behalf of AVALON, intentionally and willfully omitted, concealed, and suppressed the fact that MORARI and AVALON and were going to use Plaintiff's

///

Design and Drawings in the process of obtaining a building permit and in constructing the hotel without notice or compensation to Plaintiff.

41.    Plaintiff's Design and Drawings were clearly stamped with language indicating that Plaintiff had sole ownership of the plans.

42.    Thereafter, MORARI, individually and on behalf of AVALON, utilized the Plaintiff's Design and Drawings without Plaintiff's knowledge and consent, and then also knowingly and intentionally utilized Plaintiff's Design and Drawings for the hotel without informing and notifying Plaintiff and without license, permission or consent from Plaintiff, and without compensation to Plaintiff and fraudulently concealed this fact from Plaintiff.

43.    The above communications and dealings created an implied-in-fact contract with Plaintiff and therefore a fiduciary relationship arose by which Defendants were bound by the terms they had agreed upon.  Under the implied-in-fact contract between Plaintiff and MORARI, MORARI had the duty to notify and inform Plaintiff that MORARI and AVALON were utilizing Plaintiff's architectural drawings and plans that had been provided to MORARI on the condition that if MORARI used the architectural drawings and plans Plaintiff would be paid for the architectural drawings and plans and Plaintiff would be the architect on the Project.  MORARI accepted the email knowing the condition upon which it was provided.

44.    MORARI breached his duty under the implied-in-fact contract between Plaintiff and MORARI when he failed to inform and concealed from Plaintiff that fact that MORARI and AVALON were going to use and did in fact use Plaintiff's architectural drawings and plans.  MORARI and other defendants intentionally failed to disclose the facts of their intention to use and their use of Plaintiff's architectural drawings and plans from Plaintiff.

///

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

45.     Plaintiff did not know and could not have known that the Defendants had utilized Plaintiff's Design and Drawings without permission and without compensating Plaintiff.

46.     MORARI and other defendants intended to deceive Plaintiff by concealing the above facts and if the omitted information had been disclosed to Plaintiff, Plaintiff would have reasonably behaved differently.

47.     Plaintiff was harmed as a result of such conduct of Defendants.

48.     Plaintiff is informed and believes and thereon alleges that Defendants' conduct proximately caused damage to Plaintiff and that it has been damaged in an amount to be proven at trial, but which is in excess of the minimum jurisdictional limit of this Court.

49.     The conduct of Defendants was willful and malicious and in conscious disregard of Plaintiff's rights with the intent to vex, injure and annoy Plaintiff, such as to constitute oppression, fraud and/or malice under California *Civil Code* §3294.  Defendants' conduct, as described above, was carried out by its officers, directors and or/managing agents, or by lower level employees whose conduct was knowingly authorized and ratified by the officers, directors and/or managing agents of Defendants. Accordingly, Plaintiff is entitled to punitive damages in an amount appropriate to punish and make an example of Defendants.

## THIRD CLAIM FOR RELIEF

### (Against BIPIN MORARI, AVALON LODGING, LLC and
### DOES 1 through 5 for Fraud-False Promise)

50.     Plaintiff repeats, re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 49, inclusive, of this Complaint, as though fully set forth herein.

51.     Defendant MORARI made a promise to Plaintiff as follows: In the first communication between MORARI and Mr. Kamat, MORARI knew that

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

there was no intention on the part of himself and/or AVALON to pay for Plaintiff's architectural drawing and plans or utilize the services of Plaintiff as architect for the Project.  However, as set forth above, MORARI entered into the implied-in-fact contract when he asked Mr. Kamat to present a proposal to him which would include Plaintiff's architectural drawings and plans.  The proposal was made on the condition that if it was decided that MORARI and AVALON would use Plaintiff's architectural drawings plans, MORARI would pay for the Plaintiff's architectural drawings and plans and would use Plaintiff as the architect on the Project.

52.     Plaintiff is informed and believes and thereon alleges that Defendant MORARI's promise was in fact false, and he did not intend to perform this promise when he made it because at the time that MORARI entered into the implied-in-fact contract and made the representations he had no intention to pay for Plaintiff's architectural drawings and plans and had no intention of using Plaintiff as the architect on the Project.

53.     Plaintiff is informed and believes and thereon alleges that Defendant MORARI intended that Plaintiff rely on this promise and release its architectural drawings to Defendant.  By such false promise, MORARI induced Plaintiff to obtain proposals from various other entities and to provide MORARI and AVALON with Plaintiff's architectural drawings and plans for the hotel.

54.     MORARI, individually and on behalf of AVALON, utilized Plaintiff's architectural drawings and plans without Plaintiff's knowledge and consent, and then also knowingly and intentionally utilized Plaintiff's architectural drawings and plans for the hotel without license, permission or consent from Plaintiff, and without compensation to Plaintiff.

55.     Plaintiff reasonably relied upon the false promise of MORARI that he and AVALON would not use Plaintiff's architectural drawings and plans

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

without compensating Plaintiff and without Plaintiff being the architect on the Project.

56.     Plaintiff did not know and could not have known that the Defendants had intended to utilize Plaintiff's architectural drawings and plans without permission and without compensating Plaintiff.

57.     As detailed above, MORARI and other Defendants did not perform the promised act.

58.     Plaintiff was in fact harmed and Plaintiff's justifiable reliance on Defendant's promise was a substantial factor in causing Plaintiff's harm.

59.     Defendants' conduct proximately caused damage to Plaintiff and Plaintiff has been damaged in an amount to be proven at trial, but which is in excess of the minimum jurisdictional limit of this Court.

60.     The conduct of Defendants was willful and malicious and in conscious disregard of Plaintiff's rights with the intent to vex, injure and annoy Plaintiff, such as to constitute oppression, fraud and/or malice under California *Civil Code* §3294.  Defendants' conduct, as described above, was carried out by its officers, directors and or/managing agents, or by lower level employees whose conduct was knowingly authorized and ratified by the officers, directors and/or managing agents of Defendants. Accordingly, Plaintiff is entitled to punitive damages in an amount appropriate to punish and make an example of Defendants.

## <u>FOURTH CLAIM FOR RELIEF</u>

### (Against BIPIN MORARI, AVALON LODGING, LLC and
### DOES 1 through 5 for Negligent Misrepresentation)

61.     Plaintiff repeats, re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 60, inclusive, of this Complaint, as though fully set forth herein.

*///*

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

62.     In the first communication between MORARI and Mr. Kamat, on June 5, 2015, Mr. Kamat told MORARI that Plaintiff was the Architect of Record for the Project, that it had obtained all Project Approvals and Determinations from the Planning Department, and Entitlement or Discretionary Approvals, and explained that Plaintiff can continue on the Project.  MORARI asked Mr. Kamat for a proposal for Plaintiff's continuing its work at the Project. Mr. Kamat explained that he would need to get proposals for various engineering consultants and then give MORARI a proposal.  Plaintiff and MORARI discussed the fact that as part of the Plaintiff's proposal a copy of Plaintiff's architectural drawings and plans would be included with the proposals.  Mr. Kamat made it clear that unless MORARI agreed to use Plaintiff as the architect on the Project, MORARI could not use the architectural drawings and plans.  MORARI told Mr. Kamat to get the consultant proposals and give him Plaintiff's proposals.  MORARI was knew that the plans for the hotel were being disclosed upon the condition that the architectural drawings and plans could not be used without paying Plaintiff for the architectural drawings and plans and using Plaintiff as the architect for the Project.

63.     MORARI told Mr. Kamat to get the consultant proposals and give him Plaintiff's proposals, and represented to Mr. Kamat his agreement to the conditions set by Mr. Kamat.

64.     Plaintiff is informed and believes and thereon alleges that this statement made by MORARI was false.

65.     MORARI was aware that the plans for the hotel were being disclosed upon the condition that the architectural drawings and plans could not be used without paying Plaintiff for the architectural drawings and plans and using Plaintiff as the architect for the Project.  Mr. Kamat then sent an email to all the consultants to get their proposals and went about collecting these proposals and

///

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

drafting a complete proposal for Plaintiff to continue the work as the Architect of Record pursuant to the same terms as the contract with the previous owner.

66.    On June 26, 2015, Mr. Kamat sent MORARI an email containing Plaintiff's proposal for the next stage of development, which included: 1) Design development; 2) Architectural construction documents; 3) Agency review and bidding; and 4) Construction phase services. The cost estimate for these services contained within the proposal for Plaintiff's services was $90,000, plus $200/hour for additional services. Mr. Kamat also obtained and submitted copies of proposals for structural, mechanical, electrical, plumbing, civil, and landscape services for the Project, as well for Plaintiff's own architectural services. In this emailed proposal, Mr. Kamat also indicated to MORARI that Plaintiff was the sole owner, author, and copyright holder of all architectural drawings and plans created by Plaintiff for the hotel, and that upon execution of the contract Plaintiff would grant AVALON and MORARI a license for use of the architectural drawings and plans for the Project.

67.    MORARI accepted the proposal sent via email to him.  Mr. Kamat and MORARI then had several telephone conversations about Plaintiff's proposal on June 26, 2015 and June 27, 2015. According to the phone records obtained by Plaintiff, these calls were of significant duration, one for 5 minutes and another for 14 minutes.  Plaintiff is informed and believes and thereon alleges that during these calls, Mr. Kamat and MORARI discussed, amongst other subjects, timeframe of work, what drawings and services would be provided, general permit process and timing of building permits. Mr. Kamat explained that it was beneficial to utilize Plaintiff's services because the planning department had already approved the plans designed by Plaintiff.  Mr. Kamat also told MORARI that he had emailed him the proposal and MORARI stated he had received it and that he would review and get back to Mr. Kamat. MORARI accepted the proposal

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

knowing that the architectural drawings and plans were being provided on the condition that if MORARI decided to use the architectural drawings and plans, MORARI was to pay for the architectural drawings and plans and would use Plaintiff as the architect on the Project. Then MORARI went silent and abruptly cut off all contact with Mr. Kamat.

68.     Plaintiff is informed and believes and thereon alleges that at the time MORARI made the above representations, MORARI had no reasonable grounds to believe them to be true.

69.     Plaintiff is informed and believes and thereon alleges that MORARI intended that Plaintiff rely on the above statements and representations of fact.

70.     Thereafter MORARI, individually and on behalf of AVALON, utilized Plaintiff's architectural drawings and plans without Plaintiff's knowledge and consent, and then also knowingly and intentionally utilized Plaintiff's architectural drawings and plans for the hotel without license, permission or consent from Plaintiff, and without compensation to Plaintiff.

71.     Plaintiff reasonably relied upon the representations of MORARI that he and AVALON would not use Plaintiff's architectural drawings and plans without compensating Plaintiff for the architectural drawings and plans and would use Plaintiff as the architect on the Project.

72.     Plaintiff did not know and could not have known that the Defendants would breach the implied-in-fact contract and would utilize Plaintiff's architectural drawings and plans without permission and without compensating Plaintiff.

73.     Plaintiff was in fact harmed due to MORARI and other Defendants' conduct.

74.     Plaintiff is informed and believes and thereon alleges that Defendants' negligent conduct proximately caused damage to Plaintiff and that it

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

has been damaged in an amount to be proven at trial, but which is in excess of the minimum jurisdictional limit of this Court.

## FIFTH CLAIM FOR RELIEF

**(Against Defendants W&W Land Design Consultants, Inc., Winston Liu, P.E., Tom Lau AIA, and DOES 6 through 10 for Intentional Interference With Prospective Economic Advantage)**

75.    Plaintiff repeats, re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 74, inclusive, of this Complaint, as though fully set forth herein.

76.    Plaintiff's continued involvement in the construction of the Project was an economic relationship that would have resulted in substantial economic benefit to Plaintiff.

77.    All of Plaintiff's designs and drawings for the Project were stamped with the following language:

> **"No copies, transmission, reproductions or electronic manipulations of any portion of these drawings in whole or in part are to be made without the express written permission from nKLOSURES Inc. All content in these drawings (including concepts, designs, imagery, graphics and logo) are the property of nKLOSURES Inc."**

Thus, W&W, LIU and LAU knew that written permission was necessary in order for the plans and drawings to be used for any purpose including submission for a permit to construct a hotel on the subject property and to utilize for building the hotel on the subject property.  W&W, LIU and LAU were never provided with a written permission for them or for MORARI and/or AVALON to use Plaintiff's plans and drawings.

///

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

78.     Plaintiff is informed and believes and thereon alleges that Defendants W&W, LIU and LAU knew that MORARI and/or AVALON did not have permission to use Plaintiff's drawings and plans.

79.     Plaintiff is informed and believes and thereon alleges that Defendants W&W, LIU and LAU and DOES 6 through 10 knew that Plaintiff and MORARI had entered into an implied-in-fact contract in which Plaintiff had provided a copy of Plaintiff's architectural drawings and plans on the condition that if MORARI and AVALON utilized the architectural drawings and plans, MORARI and AVALON would pay Plaintiff for the architectural drawings and plans and would use Plaintiff as the architect on the Project.

80.     Plaintiff is informed and believes and thereon alleges that Defendants W&W, LIU and LAU knew that MORARI had received a proposal from Plaintiff for Plaintiff to provide the architectural plans and drawings and for Plaintiff to be the Architect of Record for the Project.

81.     Defendants W&W, LIU and LAU knew that Plaintiff would receive substantial compensation if Plaintiff's architectural drawings and plans were used for the hotel and Plaintiff was selected as the architect for the Project.

82.     Plaintiff is informed and believes and thereon alleges that Defendants W&W, LIU and LAU told MORARI, individually and on behalf of AVALON, that if they were retained as the Architect of Record for the Project they would obtain a permit to build the hotel using the architectural plans and drawings created by Plaintiff and that they would assist MORARI and AVALON in building the hotel as designed by Plaintiff.

83.     Plaintiff is informed and believes and thereon alleges that Defendants told MORARI that utilizing Plaintiff's architectural drawings and plans for the Project would save a lot of time, energy and money for the Project.

///

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

84.     After discussion with Defendants W&W, LIU and LAU, MORARI ignored all communication attempts by Plaintiff.

85.     Defendants W&W, LIU and LAU were retained to be the architects based upon the scheme of W&W, LIU and LAU to infringe on Plaintiff's copyright architectural drawings and plans.

86.     W&W, LIU and LAU further engaged in wrongful conduct in that they willfully infringed upon Plaintiff's copyright in that they utilized the Plaintiff's architectural drawings and plans created by Plaintiff in the application to the City of Los Angeles for a building permit.  This is evidenced by the fact that plans submitted by defendants to the City still had Plaintiff's logo on them.

87.     By utilizing the Plaintiff's architectural drawings and plans W&W, LIU and LAU were able to obtain a building permit.  If W&W, LIU and LAU created their own design and drawings, approval from the City of Los Angeles planning department would have been required prior to submitting an application to the City of Los Angeles for a building permit.  By not having to incur the costs of obtaining the planning department's approval and not having to actually create their own design and drawings, W&W, LIU and LAU saved substantial time, energy and money with respect to the Project.

88.     Plaintiff is informed and believes and thereon alleges that by engaging in the wrongful conduct describe above, Defendants intended to disrupt Plaintiff's prospective economic relationship.

89.     Plaintiff's prospective economic relationship was in fact disrupted.

90.     Plaintiff is informed and believes and thereon alleges that the conduct of W&W, LIU and LAU proximately caused damage to Plaintiff and that Plaintiff has been damaged in an amount to be proven at trial, but which is in excess of the minimum jurisdictional limit of this Court.

///

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

91.    The conduct of Defendants W&W, LIU and LAU was willful and malicious and in conscious disregard of Plaintiff's rights with the intent to vex, injure and annoy Plaintiff, such as to constitute oppression, fraud and/or malice under California *Civil Code* §3294.  Defendants' conduct, as described above, was carried out by its officers, directors and or/managing agents, or by lower level employees whose conduct was knowingly authorized and ratified by the officers, directors and/or managing agents of Defendants. Accordingly, Plaintiff is entitled to punitive damages in an amount appropriate to punish and make an example of Defendants.

## SIXTH CLAIM FOR RELIEF

### (Against All Defendants for Unfair Business Practices Pursuant To California Business & Professions Code §17200)

92.    Plaintiff repeats, re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 91, inclusive, of this Complaint, as though fully set forth herein.

93.    California *Business and Professions* Code §17200 states in pertinent part: "…unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice…"

94.    Defendants' actions and omissions described herein constitute unlawful, unfair, and fraudulent activities as proscribed by California's Unfair Competition Law.  Defendants violated the laws stated herein, including California *Civil Code* §§1709 and 1710.

95.    Defendants' conduct caused and continues to cause substantial injury and a loss of revenue to Plaintiff.

96.    Accordingly, Plaintiff is entitled to restitution and temporary and permanent injunctive relief.

///

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

97. The conduct of Defendants was willful and malicious and in conscious disregard of Plaintiff's rights with the intent to vex, injure and annoy Plaintiff, such as to constitute oppression, fraud and/or malice under California *Civil Code* §3294. Defendants' conduct, as described above, was carried out by its officers, directors and or/managing agents, or by lower-level employees whose conduct was knowingly authorized and ratified by the officers, directors and/or managing agents of Defendants. Accordingly, Plaintiff is entitled to punitive damages in an amount appropriate to punish and make an example of Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for judgment against Defendants as follows:

1. For a permanent injunction, enjoining Defendants and all persons in active concert or participation with Defendants from directly or indirectly infringing the Copyright for the Burbank Hotel architectural plans and drawings;

2. For an award of actual damages and profits;

3. For compensatory damages in a sum to be proven at trial, including fair compensation for the time and money properly expended by Plaintiff to recover its converted work pursuant to California *Civil Code* §3336;

4. For punitive and exemplary damages against Defendants;

5. For restitution;

6. For disgorgement of business profits;

7. For costs of suit incurred herein; and

///
///
///
///
///

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGMENT**

8.     For such other and further relief as the Court may deem just and proper.


Dated:  March 25, 2022

GHASSEMIAN   LAW   GROUP, APC


*/s/ Mahyar Ghassemian*
MAHYAR GHASSEMIAN
Attorney for Plaintiff,
nKLOSURES, INC. ARCHITECTS
fka nKLOSURES, INC.

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGMENT**

# DEMAND FOR JURY TRIAL

Plaintiff nKLOSURES, INC. ARCHITECTS fka nKLOSURES, INC. hereby demands Trial by jury in this action.


Dated:  March 25, 2022

GHASSEMIAN   LAW   GROUP, APC

*/s/ Mahyar Ghassemian*
MAHYAR GHASSEMIAN
Attorney for Plaintiff,
nKLOSURES, INC. ARCHITECTS
fka nKLOSURES, INC.

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGMENT**

## VERIFICATION

I, Nikhil Kamat, the president of nKLOSURES, Inc. Architects, the Plaintiff, in the foregoing VERIFIED COMPLAINT FOR: 1. COPYRIGHT INFRINGEMENT (17 U.S.C. §501); 2. FRAUDULENT CONCEALMENT; 3. FRAUD-FALSE PROMISE; 4. NEGLIGENT MISREPRESENTATION; 5. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; and 6. UNFAIR BUSINESS PRACTICES  PURSUANT TO CALIFORNIA BUSINESS & PROFESSIONS CODE §17200; and  DEMAND FOR JURY TRIAL, swear that the statements contained in that document are true to the best of my knowledge and belief, and that the filing of this Complaint on behalf of the corporation has been authorized.

Dated:  March 25, 2022

_____
Nikhil Kamat
President of nKLOSURES Inc. Architects

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT**