1                                                               'O'

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11

12   NKLOSURES, INC.,                 CV 22-00459-RSWL-JDEx

13              Plaintiff,            **ORDER re: MOTION TO**
                                      **DISMISS** [41]
14        v.

15
     AVALON LODGING LLC, et
16   al.,

17              Defendants.

18

19        Plaintiff nKlosure, Inc. ("Plaintiff") brought this

20   Action against Defendants Avalon Lodging, LLC

21   ("Defendant Avalon"); Bipin Morari ("Defendant Morari");

22   Best Western International, Inc.; W&W Land Design

23   Consultants, Inc.; Winston Liu, P.E.; and Tom Lau, AIA

24   (collectively, "Defendants") alleging copyright

25   infringement, breach of contract, and unfair business

26   practices.  Currently before the Court is Defendants

27   Avalon and Morari's Motion to Dismiss [41] ("Motion").

28   Having reviewed all papers submitted pertaining to this

                                1

1  Motion, the Court **NOW FINDS AND RULES AS FOLLOWS**: the
2  Court **GRANTS in part** and **DENIES in part** Defendants'
3  Motion.

I.  BACKGROUND

**A.  <u>Factual Background</u>**

6      Plaintiff's First Amended Complaint ("FAC") alleges
7  as follows:

8      On or about May 25, 2014, Plaintiff, a licensed
9  architectural firm, contracted with Mr. Thakor Patel to
10  provide architectural design services for a new
11  Los Angeles hotel.  First Am. Compl. ("FAC") ¶ 12, ECF
12  No. 39.  The contract (the "Agreement") indicated that
13  Plaintiff was the sole author, owner, and copyright
14  holder of the architectural drawings and plans (the
15  "Drawings") and that once the Planning Department
16  approved the Drawings, Mr. Patel would retain Plaintiff
17  as the architect for the hotel's construction.  <u>Id.</u>
18  Moreover, the Drawings were stamped with language
19  providing that they could not be copied or transmitted
20  without Plaintiff's express written permission.  <u>Id.</u>
21  ¶ 13.

22      After the Drawings were approved, Plaintiff learned
23  in June 2015 that Mr. Patel was selling the hotel
24  project to Defendant Avalon.  <u>Id.</u> ¶ 14.  In response,
25  Plaintiff's principal, Mr. Nikhil Kamat ("Mr. Kamat"),
26  reached out to Defendant Avalon's principal and managing
27  agent, Defendant Morari, to notify him that the Planning
28  Department had approved the Drawings and Plaintiff could

2

1   continue work on the project.  Id. ¶¶ 5, 15.  Defendant

2   Morari then asked for a proposal for Plaintiff's work.

3   Id. ¶ 15.  Mr. Kamat made it clear that Plaintiff would

4   only disclose the Drawings in its proposal on the

5   condition that Defendant Avalon could not use the

6   Drawings for the hotel unless Defendant Avalon paid

7   Plaintiff for them and hired Plaintiff as the project

8   architect.  Id.

9       Three weeks later, Mr. Kamat sent Defendant Morari

10  an e-mail containing Plaintiff's proposal.  Id. ¶ 17.

11  In the e-mail, Mr. Kamat indicated that Plaintiff was

12  the sole owner, author, and copyright holder of the

13  Drawings created for the hotel, and that upon execution

14  of a contract, Plaintiff would grant Defendant Avalon a

15  license to use the Drawings in the hotel's construction.

16  Id.  In two subsequent phone calls, Defendant Morari

17  told Mr. Kamat that he would review the proposal and get

18  back to him.  Id. ¶ 18.  Defendant Morari understood

19  that if he decided to use the Drawings, Defendant Avalon

20  would have to pay for them and use Plaintiff as the

21  architect on the project.  Id.  Thereafter, Defendant

22  Morari went silent and cut off all contact with Mr.

23  Kamat.  Id.

24      Several weeks later, Mr. Kamat sent an e-mail to

25  follow up on the proposal, but Defendant Morari did not

26  respond nor contact Plaintiff again.  Id. ¶ 19.

27  Mr. Kamat therefore inferred that Defendant Morari was

28  not interested in using the Drawings for the hotel.  Id.

3

On or about June 22, 2020, Mr. Kamat saw an advertisement for the sale of a hotel that had since been constructed on the property and recognized the design as his own.  Id. ¶ 21.  He also learned that Defendant Avalon had hired Defendant W&W Land Design Consultant, Inc. ("W&W") for the next stage of project development and that Defendants had used Plaintiff's preliminary schematic design and drawings in the hotel's construction.  Id.  Sometime thereafter, Plaintiff learned that the Drawings were included in a Power Point presentation (the "Presentation") marketing the property.  Id. ¶ 20.

On January 13, 2022, Plaintiff filed a copyright application for the Drawings and the United States Copyright Office granted Copyright Registration Certificate No. VA 2-282-647 for the Drawings five days later.  Id. ¶¶ 24-25.

**B.   Procedural Background**

Defendants filed the instant Motion [42] on September 8, 2022.  Plaintiff opposed [48] the Motion on October 4, 2022.  Defendants replied [49] on October 7, 2022.

## II.   DISCUSSION

**A.   Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint must "contain sufficient factual matter, accepted as true, to

4

state a claim to relief that is plausible on its face."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation
omitted).  Dismissal is warranted for a "lack of a
cognizable legal theory or the absence of sufficient
facts alleged under a cognizable legal theory."
Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699
(9th Cir. 1988) (citation omitted).

     In ruling on a Rule 12(b)(6) motion, a court may
generally consider only allegations contained in the
pleadings, exhibits attached to the complaint, and
matters properly subject to judicial notice.  Swartz v.
KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  A court
must presume all factual allegations of the complaint to
be true and draw all reasonable inferences in favor of
the non-moving party.  Klarfeld v. United States, 944
F.2d 583, 585 (9th Cir. 1991).  The question is not
whether the plaintiff will ultimately prevail, but
whether the plaintiff is entitled to present evidence to
support its claims.  Jackson v. Birmingham Bd. of Educ.,
544 U.S. 167, 184 (2005) (quoting Scheuer v. Rhodes,
416 U.S. 232, 236 (1974)).  While a complaint need not
contain detailed factual allegations, a plaintiff must
provide more than "labels and conclusions" or "a
formulaic recitation of the elements of a cause of
action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555
(2007).  However, "a well-pleaded complaint may proceed
even if it strikes a savvy judge that actual proof of
those facts is improbable, and 'that a recovery is very

1  remote and unlikely.'" Id. at 556 (quoting Scheuer v.

2  Rhodes, 416 U.S. 232, 236 (1974)).

3  **B.  Analysis**

4     1.  Judicial Notice

5     Before turning to the merits of Defendants' Motion,

6  the Court should first address Defendants' request for

7  judicial notice.  A court may take judicial notice of an

8  adjudicative fact that is "not subject to reasonable

9  dispute because it: (1) is generally known within the

10  trial court's territorial jurisdiction; or (2) can be

11  accurately and readily determined from sources whose

12  accuracy cannot reasonably be questioned." Fed. R.

13  Evid. 201(b).  Matters of public record may be

14  judicially noticed, but disputed facts contained therein

15  may not.  Khoja v. Orexigen Therapeutics, Inc., 899 F.3d

16  988, 999 (9th Cir. 2018).  "[A]ccuracy is only part of

17  the inquiry under Rule 201(b)." Id.  "A court must also

18  consider—and identify—which fact or facts it is noticing

19  from" the documents.  Id.

20     Here, Defendants filed a request seeking judicial

21  notice of the following twelve documents[1]: (A) the

22  May 25, 2014 Agreement (the "Agreement") between

23  Plaintiff and Mr. Patel; (B) Plaintiff's initial state-

24  court complaint in Case No. 20BBCV00441 (the "State

25  Case"); (C) The Los Angeles Superior Court ("LASC")

26

27     [1] The documents are attached to the Request for Judicial
    Notice as exhibits and are referred to here by their exhibit
28  letter.

1  September 3, 2021 Order in the State Case;
2  (D) Plaintiff's first-amended complaint in the State
3  Case; (E) The LASC December 16, 2021 Order in the State
4  Case; (F) Plaintiff's second-amended complaint, in the
5  State case; (G) the demurrer and request for judicial
6  notice Defendants filed in the State Case; (H) the
7  LASC's March 23, 2022 tentative ruling on Defendants'
8  demurrer; (I) Plaintiff's voluntary dismissal of the
9  State Case; (J) Plaintiff's responses to Defendants'
10 Special Interrogatory No. 49, Request for Admission No.
11 32, and Form Interrogatory 17.1; (K) Plaintiff's
12 supplemental responses to Defendants' Request for
13 Admission Nos. 40-41; (L) The Presentation Plaintiff
14 referred to in the FAC.  See generally Req. for Judicial
15 Notice ("RJN"), ECF No. 42; RJN, Exs. A-L, ECF Nos. 42-1
16 through 42-12.

17          a.  Documents Subject to Judicial Notice
18      Exhibits B through I are court filings and records
19 in related proceedings and are thus properly subject to
20 judicial notice.  See Reyn's Pasta Bella, LLC v. Visa
21 USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking
22 judicial notice of pleadings, memoranda, and other court
23 documents from related litigation).  The Court takes
24 judicial notice of the existence of these proceedings,
25 their filing dates, Plaintiff's claims, and the court's
26 dispositions.  See Limcaco v. Wynn,
27 No. 220CV11372RSWLMAAX, 2021 WL 5040368, at *5 (C.D.
28 Cal. Oct. 29, 2021).  The Court should not, however,

take judicial notice of these documents for the truth of
the matters asserted therein.  See Lee v. City of Los
Angeles, 250 F.3d 668, 690 (9th Cir. 2001); Garber v.
Heilman, No. CV 08-3585-DDP (RNB), 2009 WL 409957, at *1
(C.D. Cal. Feb. 18, 2009).

            b.  Documents Subject to Incorporation by
               Reference

    Under the judicially created incorporation by
reference doctrine, "[a] court may consider evidence on
which the complaint 'necessarily relies' if: (1) the
complaint refers to the document; (2) the document is
central to the plaintiff's claim; and (3) no party
questions the authenticity of the copy attached to the
12(b)(6) motion." Marder v. Lopez, 450 F.3d 445, 448
(9th Cir. 2006).

    Exhibit A is the Agreement between Plaintiff and
Mr. Patel.  See RJN, Ex. A. Plaintiff's FAC also
extensively referenced the Agreement.  See FAC ¶¶ 12-13.
Plaintiff did not question Exhibit A's authenticity in
its Opposition and instead asserted that the license it
granted to Mr. Patel in the Agreement did not transfer
to Defendants.  See Opp'n 3:26-4:11.  The Agreement is
therefore central to Plaintiff's infringement claim, so
the Court may incorporate Exhibit A by reference into
its analysis of the current Motion.

    Exhibit L is the Presentation allegedly used to
market the property that included the Drawings.  See FAC
¶ 20.  Neither party questions Exhibit L's authenticity,

1   and Plaintiff references the Presentation in its FAC.

2   See FAC ¶ 20.  Absent direct evidence of copying, a

3   plaintiff asserting copyright infringement must prove

4   that a defendant had "access" to the underlying work.

5   See Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481

6   (9th Cir. 2000).  Thus, because Plaintiff alleges that

7   the Presentation provided Defendants with access to the

8   Drawings, the document is central to the infringement

9   claim.  The Court may therefore also incorporate the

10  Presentation by reference into its analysis of the

11  current Motion.

12      Since the Court incorporates by reference

13  Exhibits A and L, judicial notice is not necessary.  See

14  Rainville v. Anthem Um Servs., No. 18-cv-07099-RS, 2019

15  WL 13203765, at *2 n.2 (N.D. Cal. Feb. 12, 2019).

16          c.   Documents Not Subject to Judicial Notice or

17               Incorporation by Reference

18      Exhibit J and Exhibit K purportedly contain

19  Plaintiff's discovery responses in the related state

20  court proceedings, and Defendants rely on the responses

21  to undermine Plaintiff's allegations.  See RJN, Exs. J &

22  K; Defs.' Mot. to Dismiss ("Mot.").  However, a court

23  may only judicially notice an adjudicative fact if it is

24  not subject to reasonable dispute because it: "(1) is

25  generally known within the trial court's territorial

26  jurisdiction; or (2) can be accurately and readily

27  determined from sources whose accuracy cannot reasonably

28  be questioned."  Fed. R. Evid. 201(b).  A document is

"self-authenticating" – and therefore deemed not subject
to reasonable dispute - if it requires no extrinsic
evidence of genuineness to be admitted as evidence.
United States v. Alvirez, 831 F.3d 1115, 1123 (9th Cir.
2016).  Discovery responses are not self-authenticating
documents.  See United Safeguard Distribs. Ass'n, Inc.
v. Safeguard Bus. Sys., Inc., 145 F. Supp. 3d 932, 942
(C.D. Cal. 2015) ("Discovery items . . . are not proper
subjects for judicial notice because they are not 'self-
authenticating' and thus cannot be verified."); Garber
v. Heilman, No. CV 08-3585-DDP (RNB), 2009 WL 409957, at
*1 (C.D. Cal. Feb. 18, 2009); Brown v. Allstate Ins.
Co., 17 F. Supp. 2d 1134, 1138 (S.D. Cal. 1998)
(refusing to judicially notice requests for admissions
because "[t]he court proceeds with particular caution
with respect to a request for judicial notice, when, as
here, it is urged so to resolve a fundamental,
dispositive factual dispute").  Therefore, the Court
should deny Defendants' request for judicial notice for
Exhibits J and K.

    2.  Copyright Act Claim

        a.  The Court Need Not Determine Whether
           Defendants Possessed a License

A motion to dismiss challenges a complaint's
sufficiency, so it is generally inappropriate to raise
an affirmative defense in a 12(b)(6) motion.  Scott v.
Kuhlmann, 746 F.2d 1377, 13788 (9th Cir. 1984).
Therefore, to survive a motion to dismiss, plaintiffs do

not need to plead "on the subject of affirmative

defenses." Rivera v. Peri & Sons Farms, Inc., 735 F.3d

892, 902 (9th Cir. 2013).  Rather, only when a

complaint's allegations suffice to establish an

affirmative defense can a defendant properly raise the

defense in a 12(b)(6) motion.  Id.; Sams v. Yahoo! Inc.,

713 F.3d 1175, 1179 (9th Cir. 2013).  The existence of a

license is an affirmative defense to a copyright

infringement claim.  Worldwide Church of God v.

Philadelphia Church of God, Inc., 227 F.3d 1110, 1114

(9th Cir. 2000).

    Here, Defendants assert that the Agreement granted

them an express, or at least an implied, license to use

the Drawings.  Mot. 11:21-24.  However, Defendants were

not a party to the Agreement.  See RJN, Ex. A.  Instead,

they contend that Mr. Patel transferred the Agreement's

license to a third-party, RSP, who in turn sold the

land, drawings, and license to them.  Id. at 11:13-20.

But the Ninth Circuit has held that a licensee cannot

transfer a copyright license without authorization.

Harris v. Emus Recs. Corp., 734 F.2d 1329, 1334 (9th

Cir. 1984) ("A licensee, however, had no right to re-

sell or sublicense the rights acquired unless he has

been expressly authorized to do so.") (quoting M. NIMMER,

NIMMER ON COPYRIGHT § 10.01[c][4] (1983)).  The Court

should not consider the express license defense because

the FAC and Agreement provide no evidence that Plaintiff

1    authorized the license's transfer.  See generally FAC;

2    RJN, Ex. A.

3        Alternatively, copyright owners can grant

4    nonexclusive licenses by implication.  Foad Consulting

5    Grp., Inc. v. Azzalino, 270 F.3d 821, 826 (9th Cir.

6    2001).  However, "implied licenses" are, by their very

7    nature, implied.  Consequently, courts generally resolve

8    questions concerning implied licensing at summary

9    judgment — and not on motions to dismiss — because they

10   require factual inquiry and analysis.  Erwin v. Sestero,

11   No. CV143890RSWLPJWX, 2014 WL 12591480, at *3 (C.D. Cal.

12   Dec. 18, 2014); see, e.g., Effects Associates, Inc. v.

13   Cohen, 908 F.2d 555, 559 (9th Cir. 1990) (establishing

14   the three-element Effects Test to determine whether an

15   implied license exists).

16       Here, the Court declines to determine whether

17   Defendants possessed an implied license to use the

18   Drawings because the affirmative defense is not apparent

19   from the FAC's allegations and the Agreement.  See Sams,

20   713 F.3d at 1179 (maintaining that to serve as a basis

21   for dismissal, affirmative defenses should be "apparent

22   from the face of the complaint").  For example, the

23   Effects Test's third prong asks whether the licensor

24   intended for the licensee to copy and distribute the

25   work.  See Asset Mktg. Sys., Inc. v. Gagnon, 542 F.3d

26   748, 755 (9th Cir. 2008).  Plaintiff explicitly alleged

27   that (1) the Agreement contained a clause *restricting*

28   Mr. Patel's right to copy or disseminate the Drawings

and (2) Plaintiff told Defendants that it was the "sole owner, author, and copyright holder" of the Drawings and would only grant them a license for their use "upon execution of [a] contract." FAC ¶¶ 13, 17. The Agreement further provides, in pertinent part, that "[Plaintiff] is, at all times, the author, owner and copyright holder of all drawings . . . for this Project [and] . . . [Plaintiff] grants the Owner a license to use the [Drawings] for the limited purpose of *this Project only*." RJN, Ex. A at 5 (emphasis added). Thus, the FAC's allegations and incorporated Agreement do not clearly establish an implied license, particularly considering that the Agreement purported to limit the license's scope and transferability. See id.

In sum, although the Agreement granted Mr. Patel an express license to use the Drawings, the Court need not, on a motion to dismiss, determine whether he transferred (or legally could transfer) the license to Defendants when they purchased the hotel project. Additionally, the Court should refrain from determining whether Defendants possess an implied license because the FAC's allegations and the Agreement do not obviously establish the defense. See Gomez v. Quicken Loans, Inc., 629 F. App'x 799, 801 (9th Cir. 2015) ("An affirmative defense cannot serve as a basis for dismissal unless it is obvious on the face of the complaint.").

///

///

1          b.    The Court Tolls the Statute of
2                Limitations
3          Under the Copyright Act, a plaintiff must commence
4    an infringement action within three years of the claim
5    accruing.  17 U.S.C. § 507(b).  The Ninth Circuit has
6    adopted "the discovery rule," which holds that a claim
7    "accrues" when the copyright holder "has knowledge of a
8    violation or is chargeable with such knowledge."  Roley
9    v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir.
10   1994).  In other words, the three-year clock begins when
11   a plaintiff discovers the infringement, so long as the
12   plaintiff's prior unawareness of the infringement was
13   reasonable under the circumstances.  Polar Bear Prods.,
14   Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004);
15   see also Starz Ent., LLC v. MGM Domestic Television
16   Distrib., LLC, 39 F.4th 1236, 1246 (9th Cir. 2022)
17   ([B]ecause the discovery rule is an exception to the
18   general incident of injury rule, . . . the three-year
19   limitations period begins only when the copyright holder
20   knows or should have known of the infringing act.").
21         Ultimately, "precisely when a claim accrues is a
22   question of fact."  Starz Ent., LLC v. MGM Domestic
23   Television Distrib., LLC, No. CV 20-4085-DMG (KSX), 2021
24   WL 566500 (C.D. Cal. Jan. 5, 2021), motion to certify
25   appeal granted, No. CV 20-4085-DMG (KSX), 2021 WL 945237
26   (C.D. Cal. Feb. 22, 2021), and aff'd, 39 F.4th 1236 (9th
27   Cir. 2022) (holding the parties should pursue discovery
28   to determine whether the pleadings accurately reflected

when a claim accrued).  Because factual issues cannot be resolved at the pleadings stage, a court should only find a copyright claim time-barred on a motion to dismiss if no reasonable finder of fact could conclude that a copyright plaintiff's lack of knowledge of infringement prior to its alleged discovery was reasonable under the circumstances.  Mavrix Photo, Inc. v. Rant Media Network, LLC, No. CV197270DMGAFMX, 2020 WL 8028098, at *3 (C.D. Cal. Nov. 2, 2020).

In its Motion, Defendants contend that Plaintiff "could have easily checked the records of the City of L.A. and learned that Defendant Avalon's new architects had submitted plans from scratch for the new 5-story hotel by August of 2015."[2]  Mot. 28:9-12.  Indeed, constructive knowledge can trigger the statute of limitations, and "suspicion" of infringement "place[s] upon [the plaintiff] a duty to investigate further into possible infringements of [its] copyrights."  Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1521 (9th Cir. 1983); Oracle Am., Inc. v. Hewlett Packard Enter. Co., 971 F.3d 1042, 1047 (9th Cir. 2020).  "[A] plaintiff is deemed to have had constructive

---

[2] Defendants assert that Plaintiff reasonably should have recognized infringement from "scratch-made" architectural plans for a hotel with a different number of stories than the one Plaintiff had designed.  Mot. 28:9-12.  Defendants cannot have it both ways; either Defendants' hotel design infringed on the Drawings — and thus Plaintiff should have recognized the hotel as its own design — or Defendants generated an entirely independent design.

knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the [claim]." <u>Pincay v. Andrews</u>, 238 F.3d 1106, 1110 (9th Cir. 2001).

Here, however, Plaintiff alleged that Defendants failed to follow up on its proposal to execute a contract that would grant Defendants a license for the Drawings and make Plaintiff the lead architect for construction.  FAC ¶¶ 15-19.  On a motion to dismiss, the Court should not impose a duty to investigate upon a plaintiff unless the complaint clearly evidences the plaintiff's suspicion or constructive knowledge of infringement.  <u>See</u> <u>Von Saher v. Norton Simon Museum of Art at Pasadena</u>, 592 F.3d 954, 969 (9th Cir. 2010) ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.").  Unlike in <u>Wood</u>, where a plaintiff had filed a similar lawsuit many years prior, thus evidencing suspicion, the FAC here does not demonstrate that Plaintiff suspected infringement before Mr. Kamat viewed the hotel advertisement in 2020.  <u>See</u> <u>Wood</u>, 705 F.2d at 1521; FAC ¶ 21.  Any evidence to the contrary can be revealed in discovery and would properly be considered on a motion for summary judgment.

Therefore, presuming the FAC's factual allegations as true, the Court should find that a reasonable fact finder could believe that Plaintiff first discovered the

1  alleged infringement on or about June 22, 2020, and that
2  its prior unawareness was reasonable.  Thus, the Court
3  applies the discovery rule, tolls the statute of
4  limitations, and holds that Plaintiff timely filed its
5  claim under the Copyright Act.
6      In summary, the Court need not determine on the
7  current Motion whether Defendants' license defense has
8  merit.  The Court also applies the discovery rule and
9  tolls the statute of limitations, thus rendering the
10 claim timely filed.  The Court therefore **DENIES**
11 Defendants' Motion to Dismiss the copyright infringement
12 claim.
13     3.   Breach of Contract Claim
14          a.   Plaintiff's Breach of Contract Claim Is Not
15               Preempted by the Copyright Act
16     The Copyright Act preempts a state law claim if the
17 underlying work falls within the "subject matter" of the
18 Act and the rights the plaintiff asserts under state law
19 are equivalent to those protected by the Act.  Kodadek
20 v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th Cir.
21 1998).  "For preemption purposes, ideas and concepts
22 that are fixed in a tangible medium fall within the
23 scope of copyright."  Montz v. Pilgrim Films &
24 Television, Inc., 649 F.3d 975, 979 (9th Cir. 2011).
25     Here, Plaintiff alleged it provided Defendants a
26 copy of the Drawings in its e-mail proposal, so the work
27 at issue was fixed in a tangible medium.  See FAC ¶¶ 18,
28 35.  Therefore, the Drawings fall within the subject

matter afforded protection by the Copyright Act.  See
Kodadek, 152 F.3d at 1212.

Next, "[t]o survive preemption, the state cause of
action must protect rights that are qualitatively
different from the rights protected by copyright: the
complaint must allege an 'extra element' that changes
the nature of the action."  Grosso v. Miramax Film
Corp., 383 F.3d 965, 968 (9th Cir. 2004), opinion
amended on denial of reh'g, 400 F.3d 658 (9th Cir.
2005).  For a breach of contract claim, courts look to
the rights created by the contract and determine whether
they "differ from the prohibition of unauthorized
reproduction, performance, distribution, or display of
work protected under copyright law."  Rumble, Inc. v.
Daily Mail & Gen. Tr. PLC, No. CV 19-08420-CJC(EX),
2020 WL 2510652, at *3 (C.D. Cal. Feb. 12, 2020).

Here, no express contract exists, but Plaintiff
alleged that its correspondence with Defendants created
an implied-in-fact contract.  See FAC ¶ 39.  "[W]here an
idea is furnished by one party to another, a contract
sometimes may be implied even in the absence of an
express promise to pay."  Grosso, 383 F.3d at 967.
"California law allows for recovery for the breach of an
implied-in-fact contract when the recipient of a
valuable idea accepts the information knowing that
compensation is expected, and subsequently uses the idea
without paying for it."  Landsberg v. Scrabble Crossword
Game Players, Inc., 802 F.2d 1193, 1196 (9th Cir. 1986).

1  This implied promise to pay suffices as an "extra
2  element" for preemption purposes. <u>Grosso</u>, 383 F.3d
3  at 968.

4      Plaintiff alleged that Defendants knew it disclosed
5  the Drawings on the condition that Defendants could not
6  use them unless Defendants paid for them and hired
7  Plaintiff as the architect for construction.  FAC ¶ 15.
8  Taken as true, this understanding constitutes an extra
9  element enabling the breach of contract claim to avoid
10  preemption under the Copyright Act.  <u>See</u> <u>Landsberg</u>,
11  802 F.2d at 1196-97; <u>see also</u> <u>Grosso</u>, 383 F.3d at 968
12  (finding a plaintiff's disclosure of his playscript to
13  defendants evidenced a bilateral expectation of
14  compensation which constituted an extra element for
15  preemption purposes).

16          b.   <u>Plaintiff Pled Sufficient Facts to</u>
17               <u>Establish a Prima Facie Breach of Contract</u>
18               <u>Claim</u>

19      Under California law, a plaintiff must plead the
20  same elements for a breach of an implied-in-fact
21  contract claim as for the breach of an express contract.
22  <u>Marshall & Swift/Boeckh, LLC v. URS Corp.</u>, No.
23  CV0804375GAFSSX, 2009 WL 10668449, at *21 (C.D. Cal.
24  Aug. 26, 2009).  Therefore, Plaintiff must plead
25  (1) that a valid contract existed; (2) Plaintiff's
26  performance, or excused nonperformance, of the contract;
27  (3) Defendants' breach; and (4) resulting damages.  To
28  state a <u>Desny</u> claim for breach of an implied-in-fact

contract,[3] a plaintiff must allege that the plaintiff (1) prepared the work, (2) disclosed the work to the defendant for sale, and (3) did so under circumstances from which it could be concluded that the defendant voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work.  Grosso, 383 F.3d at 967.

Here, Plaintiff alleges the following: (1) it created the Drawings; (2) Mr. Kamat disclosed the Drawings to Defendant Morari in its June 26, 2015, proposal; and (3) Mr. Kamat told Defendant Morari over the phone and in his June 26, 2015 e-mail that if Defendant Avalon wanted to use the Drawings, it would have to pay for them and hire Plaintiff as the hotel architect.  FAC ¶¶ 12-13, 17-18.  Plaintiff further alleges that on the phone calls, the two principals discussed what drawings would be provided.  Id.  Given Plaintiff's allegations regarding the parties' telephone communication and Mr. Kamat's e-mail indicating that Plaintiff would only grant a license for the Drawings

---

[3] The Supreme Court of California originally created the concept of implied-in-fact contracts to protect film writers from being deprived of the ideas they pitch to studio producers without just compensation.  See Desny v. Wilder, 299 P.2d 257 (Cal. 1956).  Courts have since applied the concept to various types of intellectual property disclosure, including patent technology, website designs, and toys.  See, e.g., JBF Interlude 2009 Ltd. v. Quibi Holdings LLC, No. 220CV02250CASSKX, 2020 WL 6203555 (C.D. Cal. Oct. 19, 2020); Riggs v. MySpace, Inc., 444 F. App'x 986 (9th Cir. 2011); Gunther-Wahl Prods., Inc. v. Mattel, Inc., 128 Cal. Rptr. 2d 50 (2002).  Therefore, the Court should find that architectural design disclosure can also form an implied-in-fact contract.

1  use upon execution of a contract, the Court should find

2  that the FAC sufficiently alleged that Defendant Morari

3  understood the condition on which Plaintiff tendered the

4  Drawings.  See id. ¶¶ 17-18; JBF, 2020 WL 6203555, at *6

5  (holding that a defendant's interest in "purchasing"

6  disclosed technology sufficiently implied that he knew

7  he had to pay for it).

8       In sum, Plaintiff sufficiently alleged it formed an

9  implied-in-fact contract, it performed by delivering the

10 Drawings in the proposal, and Defendants breached the

11 implied-in-fact contract by using the Drawings without

12 compensating Plaintiff for their use.  See FAC ¶¶ 17-19,

13 21, 23.  Plaintiff also alleged Defendants' breach

14 caused Plaintiff harm and damages in an amount to be

15 proved at trial.  FAC ¶¶ 41-42.  Therefore, Plaintiff

16 has sufficiently pled a prima facie breach of contract

17 case to survive a motion to dismiss.

18            c.  Plaintiff's Breach of Implied-in-Fact

19                Contract Claim Is Plausible on Its Face

20      In the Motion, Defendants asserted that Plaintiff's

21 own statements prove that Plaintiff never provided the

22 Drawings to Defendant Avalon at all.  Id. at 22:28-23:1.

23 Defendants relied on two purported excerpts from

24 Plaintiff's discovery responses in the previous state

25 action to undermine the FAC.[4]  Id. 21:4-26.  However,

26 _____

27      [4] Defendants' first contention – that in its response to
   Special Interrogatory No. 49, Plaintiff said it failed to take
   steps to protect the Drawings because it "was unaware that
28 Defendants had possession of the [D]rawings" – appears in Exhibit

21

because the discovery responses in Exhibits J and K are not properly subject to judicial notice, the Court should not determine whether the statements therein render Plaintiff's breach of contract claim implausible. See Swartz, 476 F.3d at 763 ("In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."); Safeguard, 145 F. Supp. 3d at 942 ("Discovery items . . . are not proper subjects for judicial notice because they are not 'self-authenticating' and thus cannot be verified."). Presuming all the factual allegations in the FAC to be true – including that Plaintiff e-mailed the Drawings to Defendant Morari – Plaintiff has pled a breach of implied-in-fact contract claim that is plausible on its face. Consequently, the Court **DENIES** Defendants' motion to dismiss Plaintiff's implied-in-fact contract claim.

    4.   The Court Dismisses Plaintiff's Unfair
           Competition Law Claim Without Leave to Amend

    In its Opposition, Plaintiff requested that the Court dismiss its unfair competition law ("UCL") claim, "subject to the unlikely scenario of [P]laintiff seeking leave from the Court to reassert [the] claim." Opp'n

---

J.  Id. at 21:12-13.  However, Defendants' second example – that in response to form interrogatory 17.1, Plaintiff claimed it "did not know and could not have known that Defendants had obtained [the Drawings]" – did not appear in the documents attached to the Motion.  See RJN, Ex J & K.

7:22-24.  In its Reply, Defendants accepted the concession.  Reply 10:1.  Therefore, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's UCL claim.

Plaintiff requested that the Court dismiss the UCL claim with leave to amend.  Opp'n 7:23.  "Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend."  Winebarger v. Pennsylvania Higher Educ. Assistance Agency, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019).  "The court should give leave [to amend] freely when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In the Ninth Circuit, "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'"  United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).  Against this extremely liberal standard, the Court may consider "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility."  Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001).

Here, leave to amend should be denied.  Plaintiff admits it cannot "identify any material relief uniquely available under the UCL that would justify extensive argument and litigation activity to carry forward this separate cause of action" and therefore it is "unlikely" to reassert the UCL claim in the future.  See Opp'n 7:18-23.  Given these statements and Plaintiff's previous amendment, it is clear that amendment would be futile.

"The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).  Here, Plaintiff filed three state court complaints alleging its unfair business practices claim, and it has already amended its complaint in federal court once.  See RJN, Exs. B, D, F, ECF Nos. 42-2, 42-4.  Thus, Plaintiff has had multiple opportunities to refine its claim.  Yet Plaintiff concedes that despite its amendment, its claim should not proceed and that is unlikely it can cure its claim.  Opp'n 7:23-24.  Plaintiff's statements ring true.  It is unlikely Plaintiff would reassert its UCL claim, because amending Plaintiff's claim would not make available relief that is not already sought under Plaintiff's other claims.  Therefore, the Court should find that granting leave to amend would be futile.  See In re Vantive Corp. Sec. Litig., 283 F.3d 1079 (9th Cir. 2002) (holding that because plaintiffs had three opportunities to plead their case, it was not unreasonable for the district court to conclude that it would be pointless to provide another chance to amend). The Court therefore **GRANTS** Defendants' Motion to Dismiss the UCL claim **without leave to amend**.

///

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' Motion to Dismiss the copyright infringement and breach of contract claims and **GRANTS** Defendants' Motion to Dismiss the UCL claim **without leave to amend.**

**IT IS SO ORDERED.**

DATED: November 17, 2022 _____
                                                          /S/ RONALD S.W. LEW

                                         **HONORABLE RONALD S.W. LEW**
                                         Senior U.S. District Judge